IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| United States of America,           ) | |
| ) | CR No. 7:7-711-4-TMC |
| v.                                            ) | |
| ) | **OPINION and ORDER** |
| Christopher Lamar Jackson,      ) | |
| ) | |
| Movant.              ) | |

This matter is before the court on motion of Christopher Lamar Jackson ("Jackson") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1608), and the Government's motion for summary judgment (ECF No. 1619). Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Jackson of the summary judgment procedure and the consequences if he failed to respond. (ECF No. 1629). Jackson filed a response on December 10, 2012 (ECF No. 1631), and a supplemental response on January 2, 2013 (ECF No. 1640). For the reasons set forth below, the court finds that a hearing on Jackson's motion is unnecessary and that the Government's motion for summary judgment should be granted.

## I.  PROCEDURAL HISTORY

On October 2, 2007, Jackson pled guilty to one count of conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. (ECF No. 735). The Presentence Investigation Report ("PSR:) prepared prior to sentencing calculated Jackson's sentencing guideline range under the advisory sentencing guidelines at 262-327 months. (ECF No. 1519-4). However, prior to the sentencing hearing, the Government filed a motion for a downward departure pursuant to U.S.S.G. § 5K 1.1. (ECF No. 1050). On April 1, 2008, Jackson

was sentenced by then United States District Judge Henry F. Floyd to 192 months in prison. (ECF No. 1118).[1]

Thereafter, Jackson filed a motion for retroactive application of the revised sentencing guidelines applicable to crack cocaine and a reduction in his sentence. (ECF No. 1161). This motion was denied. (ECF No. 1250).

On February 26, 2009, Jackson filed his first motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1220). That motion set forth five grounds for relief, one of which was that Jackson's trial counsel allegedly failed to file a notice of appeal after being directed to do so by Jackson. On September 23, 2010, Judge Floyd issued an order granting the motion on that ground only, without objection from the Government. The order provided: "movant's sentence is vacated and his judgment is immediately re-imposed and reinstated. The remaining claims raised in movant's motion are dismissed without prejudice." (ECF No. 1256).[2]

On March 25, 2009, Jackson filed a motion to correct, clarify, or modify his sentence (ECF No. 1236), seeking credit for time served under an order for home confinement prior to his sentence, which was denied. (ECF No. 1268).

On April 8, 2009, Jackson filed a motion for reconsideration of his sentence pursuant to 18 U.S.C. § 3582(C)(2), in light of the United States Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007). (ECF No. 1265). The court granted Jackson's request for review of his sentence, but after review in light of the holding in *Kimbrough*, denied Jackson's motion. (ECF No. 1274).

---

[1] This case was assigned to the undersigned on August 7, 2012. (ECF No. 1607).
[2] This order made no finding as to the veracity of Jackson's claim.

On April 17, 2009, Jackson filed a Notice of Appeal. His appeal was dismissed by the Fourth Circuit Court of Appeals on June 22, 2009, for failure to prosecute. *United States v. Jackson*, No. 09-6754 (4th Cir. 2009).

Jackson thereafter filed another appeal. In an unpublished opinion, the Fourth Circuit affirmed his conviction and sentence, and dismissed his claim of ineffective assistance of counsel, declining to consider it on direct appeal. *United States v. Christopher Lamar Jackson*, 468 Fed. Appx. 336, 337 (4th Cir. 2012) (Unpublished).

The United States Sentencing Guidelines Commission issued revised guideline ranges applicable to crack cocaine offenses on November 1, 2010. These changes became effective on November 1, 2011, pursuant to § 1B 1.10. Jackson's case was thereafter assigned to the United States District Judge Sol Blatt, Jr., for consideration of post-judgment matters (*See* ECF No. 1525). On December 15, 2011, on motion of Jackson's court appointed counsel, Judge Blatt entered an order reducing the previously imposed sentence to 153 months pursuant to 18 U.S.C. §3582(c). (ECF No. 1544).

Jackson filed the current motion pursuant to 28 U.S.C. § 2255 on August 7, 2012.

## II.  STANDARD OF REVIEW

Section 2255 provides that a prisoner in custody under sentence of a federal court may file a motion in the court that imposed the sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255. A petitioner is entitled to relief under § 2255 if he proves by a preponderance of the evidence one of the following: (1) that the sentence was imposed in violation of the Constitution or Laws of the United States; (2) that the court was without jurisdiction to impose

such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).

Pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), to prevail on a claim of ineffective assistance of counsel, a defendant must first show that counsel's performance was "deficient," and that such deficiency resulted in actual prejudice to the Defendant. *Id.* 1t 687.

As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id.* at 687.  A reviewing court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690;  s*ee also Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993).   In order to establish prejudice under *Strickland*'s second prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."

The Counsel Clause of the Sixth Amendment provides that:   "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const.amend.VI.  Sentencing is a critical stage of the trial proceedings, thereby entitling a defendant to effective assistance of counsel. See *United States v. Breckenridge*, 93 F.3d 132, 135 (4th Cir. 1996). Counsel's failure "to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel." *Id.* at 136.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At the summary judgment stage, the court must view the evidence in the light

most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby Inc.*, 447 U.S. 242, 255 (1986).

In deciding a § 2255 motion, the court is not required to hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## III. ANALYSIS

Jackson asserts that his counsel at the sentencing hearing was ineffective in the following particulars: (1) his counsel was ineffective when he failed to object to or appeal the two level adjustment for using a juvenile pursuant to U.S.S.G. § 3B1.4; (2) counsel allowed Jackson to be sentenced as a leader or organizer based upon information provided by Jackson during his proffer, which violated the terms of his plea agreement; and (3) counsel allowed the government to enhance his sentence based upon drug weight, in violation of the plea agreement. In addition, in his response and supplemental response to the motion for summary judgment, Jackson claims that he was "coached" to plead guilty and that his attorney did not review the PSR with him prior to sentencing.

### A. Jackson's First Ground

Jackson asserts that his counsel was ineffective when she failed to object to or appeal the two level adjustment, which was imposed for using a juvenile in furtherance of his crimes.

Pursuant to U.S.S.G § 3B1.1(a), Jackson received a two level increase in his offense level because he used an unindicted juvenile to distribute crack cocaine. Section 3B1.1(a) provides that: "If the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels." U.S.S.G §3B1.1(a).

Jackson asserts that there is no evidence presented in the PSR or on the record to establish that he affirmatively used any minor in connection with the offense or that he had knowledge of a juvenile's participation in furtherance of the conspiracy. Jackson states, "the only information which the government had concerning a juvenile was what Petitioner presented during his cooperation concerning Petitioner."  (ECF No. 1608 at 5).

Jackson points to the plea agreement he signed and asserts that the Government breached the agreement by using the involvement of a minor in the conspiracy to enhance his sentence and, further, that his attorney was ineffective for failing to object to this portion of the PSR.

As a threshold matter, Jackson is barred from re-litigating this issue in the district court, as it was briefed and ruled upon by the Court of Appeals in Jackson's direct appeal. A § 2255 motion cannot be used to raise an issue that was raised and decided on direct appeal. *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009); *United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004).

Jackson raised the purported breach of the plea agreement in his second appeal to the Fourth Circuit. The court rejected this argument, stating:  "Although Jackson asserts the Government breached the plea agreement by improperly using information he shared under a cooperation agreement to enhance his sentence, we conclude that his claim is not supported by the record." 468 Fed. Appx. at 337.

Thus, while Jackson attempts to couch this assertion in the form of an ineffective assistance of counsel claim, he cannot re-litigate this issue before this court. Moreover, assuming Jackson could raise the issue before this court, the claim would necessarily fail.

While Jackson maintains that the government breached the plea agreement by using information he provided concerning use of a juvenile as part of the crime, a review of the record reflects the contrary. Under the terms of the plea agreement, Jackson agreed to cooperate and to provide information concerning the criminal activities alleged in the indictment. In consideration of this cooperation, the Government agreed as follows:

> 9. The Government agrees that any self-incriminating information provided by the Defendant as a result of the cooperation required by the terms of this Agreement, although available to the Court, will not be used against the Defendant in determining the Defendant's applicable guideline range pursuant to the U.S. Sentencing Commission Guidelines. The provisions of this paragraph shall not be applicable to restrict any such information:
>
> (A)  known to the Government prior to the date of this Agreement; . . .

(ECF No. 731).

While the PSR does not indicate that Jackson admitted his use of a juvenile in furtherance of his crimes during his proffer made pursuant to the plea agreement, paragraph 108 of the PSR does state that a confidential witness, identified as "CW2," was interviewed on March 26, 2007, and stated: "several people sell crack for Chris Jackson. He provided the names of Emma, Ricky Bobo, Sean, Amanda Moore, Bunion, *an unindicted juvenile*, and Black." (ECF No. 1519-4). Since CW2 was interviewed by law enforcement agents on March 26, 2007, the information was known to the Government well before the date of the plea agreement signed by Jackson on September 13, 2007. Therefore, under the express terms of the plea agreement, the Government and the court would not be prohibited from utilizing the information concerning use of the juvenile in furtherance of the drug conspiracy in calculating an appropriate guideline range.

Section 1B1.(8)(a) of the Sentencing Guidelines addresses the use of self-incriminating information provided by a defendant in a proffer as a part of a plea agreement to calculate a guidelines sentencing range.

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to that agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, *except to the extent provided in the agreement*.

U.S.S.G. § 1B1.8(a) (emphasis added).

As noted, under the express terms of Jackson's plea agreement, the Government and the court would not be prohibited from utilizing the information concerning use of the juvenile in furtherance of the drug conspiracy in calculating an appropriate guideline range.

Moreover, information concerning a defendant's participation in a crime obtained from an independent source may be used to calculate an appropriate sentence. *United States v. Pham*, 463 F.3d 1239 (11th Cir. 2006). Because there was no breach of the plea agreement, and because information concerning the use of a juvenile in furtherance of the crime was obtained by the government from an independent source, Jackson's attorney was not deficient when he did not make this argument to the district court.

### B. Jackson's Second Ground

In his second ground alleging ineffective assistance of counsel, Jackson asserts that his counsel was ineffective when he allowed Jackson to be sentenced as a leader or organizer based on information the Government did not possess prior to his proffer.

Again, Jackson raised this issue on direct appeal, and he is, therefore, procedurally barred from raising it before this court, even if couched in the form of a motion pursuant to § 2255, for

8

the reasons stated above. However, assuming this court would have jurisdiction to address such a claim, it still fails.

Jackson received a four level increase in offense level due to his involvement as an organizer or leader in the drug conspiracy. The Sentencing Guidelines provide as follows:

Aggravating Role

Based on the defendant's role in the offense, increase the offense level as follows: If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

U.S.S.G. § 3B1.1.

In this case, thirty-three people were indicted as part of what proved to be an extensive, wide ranging conspiracy to distribute cocaine. The 58-page PSR is replete with references and information as to Jackson's involvement as a leader, organizer, and recruiter in the conspiracy. Information obtained from witnesses and co-conspirators prior to Jackson's proffer of information pursuant to his plea agreement revealed that Jackson was the "right-hand man" to co-defendant Cody Proctor, the primary leader in the drug conspiracy, and that Jackson operated numerous stash houses for the sale of cocaine for Proctor. According to one confidential witness identified as "CW1," Jackson "was as big a drug dealer as Cody Proctor." CW2 also told investigators that he/she had bought crack cocaine from Jackson 400 to 500 different times and had taken other people to purchase crack cocaine from Jackson more than 300 times. Other witnesses told law enforcement agents that Jackson supplied crack cocaine for numerous other dealers for sale. For example, as noted in paragraph 71 of the PSR, during an undercover buy on February 17, 2007, government operatives were directed by Jackson to go to a specific crack house location for the purchase of crack cocaine where Jackson was observed "cooking," cutting and sorting significant quantities of crack cocaine for distribution. (ECF No. 1519-4).

Accordingly, substantial information was obtained from multiple independent sources as to Jackson's role as a leader and/or organizer in the crime.

Additionally, at the plea hearing, the attorney for the Government, in providing a summary of the Government's case so as to provide a factual basis for the plea, provided the following information: "The investigation revealed that Chris Jackson operated stash houses for the sale of Cody Proctor/Cody Rowland's cocaine and crack cocaine." (Plea Tr., ECF No. 1232 at 23.)

Additionally, counsel for the Government stated:

As to Chris Jackson, your Honor, the investigation revealed that he was being supplied by Cody Proctor/Cody Rowland and that he operated several stash houses for the sale of Mr. Proctor's cocaine and crack cocaine. Those stash houses included the addresses of 329 Ivey Road in Chesnee, 1021 Saluda Street in Chesnee, 213 Rhode Island Circle in Chesnee and 1002 Saluda Street in Chesnee. Your Honor is familiar with a number of individuals who have already pled guilty in this case, a number of whom had actually sold crack cocaine from those houses.

(Plea Tr., ECF No. 1231 at 24, 25).

The transcript from the plea hearing also reflects that when questioned by the court as to his agreement with the facts as stated by the Government, including his involvement in the drug conspiracy, Jackson admitted to same under oath.

> THE COURT: Mr. Jackson, do you agree with the general allegations of the drug conspiracy and in particular your involvement in the conspiracy?
>
> THE DEFENDANT JACKSON: Yes, sir.

(Plea Tr., ECF No. 1231 at 30).

Accordingly, since there was no basis upon which defense counsel could make an objection to the finding concerning Jackson's role in the offense, counsel was not deficient, and this claim is without merit.

C.     **Jackson's Third Ground**

Jackson asserts that his counsel was ineffective by allowing the Government to enhance his sentence in violation of the plea agreement. In his supporting memorandum, Jackson claims that there were two different plea agreements, and that one of them contained a stipulation that he would be held responsible for 50-150 grams of crack cocaine, but that at the sentencing hearing, the Government stated that he would be responsible for 1.5 kilos of crack cocaine.

First, Jackson has provided no evidence of the existence of any plea agreement other than the one he signed on September 13, 2007, which he acknowledged and affirmed at his plea hearing under oath and which was made a part of the record. (ECF No. 731). A reading of this agreement reflects no provision or stipulation as to drug quantities.

Additionally, at the plea hearing, the Assistant United States Attorney, when informing the court of the drug quantity to be attributed to Jackson, provided the following information:

> Your Honor, as to the involvement of each one of these individuals, the government's evidence would be as to Cody Rowland and Christopher Jackson that the evidence would be that they distributed over 1.5 kilograms of crack cocaine.

(Plea Tr., ECF No. 1439 at 27).

The court then questioned Jackson as to his agreement with this amount:

THE COURT: Mr. Jackson, do you agree with the
general allegations of the drug conspiracy and in particular
your involvement in the conspiracy?

THE DEFENDANT JACKSON: Yes, sir.

**THE COURT: Including the weight attributable to you
as 1.5 kilograms of crack cocaine?**

**THE DEFENDANT JACKSON: Yes, sir.**

(Plea Tr., ECF No. 1439 at 30-31) (emphasis added).

11

Since Jackson testified under oath at the plea hearing that the amount of crack cocaine to be attributed to him was 1.5 kilograms, his assertion that his attorney was ineffective for failing to object to this fact at his sentencing hearing must fail.

### D.  Jackson's Final Claims

In his response (ECF No. 1631) and supplemental response (ECF No. 1640) to the motion for summary judgment, Jackson asserts for the first time that his guilty plea was "coached" and that his attorney did not go over the PSR with him prior to sentencing.

At the plea hearing, Jackson testified under oath that he had ample opportunity to discuss his case with his lawyer, he was completely satisfied with his lawyer, and there was no basis upon which he could claim that his lawyer was incompetent or ineffective. (Plea Tr., ECF No. 1439 at 8-12).  He further testified that no one had threatened or forced him to plead guilty and that he was pleading guilty of his own free will because he was guilty. (Plea Tr., ECF No. 1439 at 55, 56).  He also stated that no one had told him how to answer the court's questions and that the answers he provided to the court were his own and "absolutely truthful."  (Plea Tr., ECF No. 1439 at 59-61).

Absent compelling evidence to the contrary, the "truth of sworn statements made during a Rule 11 colloquy is conclusively established." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005*); see also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (holding that a defendant's declaration at the Rule 11 hearing "carr[ies] a strong presumption of verity"); *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991) (concluding that a defendant's statement at a Rule 11 hearing that he was neither coerced nor threatened was "strong evidence of the voluntariness of his plea").  Based on Jackson's own testimony at the Rule 11 hearing, his claim that his plea was coached is without merit.

As to his claim that his attorney did not review the PSR with him prior to sentencing, Jackson's own submission reflects that the PSR was mailed to him by his attorney approximately four months prior to the sentencing hearing. (*See* ECF No. 1631-1). At the sentencing hearing, Jackson testified that he had gone over the PSR with his attorney and had no questions about it. (Sent. Tr., ECF No. 1232 at 2).

The first prong of the test enunciated in *Strickland* requires a review of the reasonableness of counsel's actions. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." 466 U.S. at 691. Here, Jackson stated under oath that he had reviewed the PSR with his attorney. Accordingly, Jackson cannot meet the first prong of the test in *Strickland* and thus, his claim that counsel was ineffective on this basis fails.

## IV. CONCLUSION

The court has conducted a thorough review of the pleadings, files, transcripts, and record in this case. Liberally construing Jackson's motions and briefs and construing the Government's motion for summary judgment in the light most favorable to the non-moving party, the court concludes the 2255 Motion should be **DISMISSED** and the Government's Motion for Summary Judgment (ECF No. 1619) should be **GRANTED.**

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the instant matter, the court finds that Petitioner has failed to make "a substantial showing of

the denial of a constitutional right." Accordingly, the court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

s/Timothy M. Cain  
Timothy M. Cain  
United States District Judge

February 5, 2014

Anderson, South Carolina

14